ADELA VALADO, Plaintiff and Appellee, *v.* GREGORIO MEJÍA, Defendant and Appellant.

No. 9723.    Argued June 2, 1948.—Decided July 23, 1948.

*Carlos D. Vázquez* for appellant.    *Wilfrido Roberts* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

This is an action for treble damages brought by Adela Valado against Gregorio Mejía under § 205 (*e*) of the Emergency Price Control Act of 1942 (56 Stat. 23, 50 U.S.C.A. Appendix § 925 (*e*) ), which provided prior to its amendment in 1944, insofar as pertinent, thus:

"If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may bring an action either for $50 or for treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater, plus reasonable attorney's fees and costs as determined by the court. For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be. . . . Any suit or action under this subsection may be brought in any court of competent jurisdiction, and shall be instituted within one year after delivery is completed or rent is paid. . ."

This section was amended on June 30, 1944 (Stabilization Extension Act of 1944, 58 Stat. 632), to provide as follows:

"If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the violation, except as hereinafter provided, bring an action against the seller on account of the overcharge. In such action, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is the greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine: *Provided, however,* That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price shedule in question was neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation. For the purposes of this section the payment or receipt for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be; and the word 'Overcharge' shall mean the amount by which the consideration exceeds the applicable maximum price."

From the evidence introduced at the trial the lower court made the following findings:

"According to the documentary as well as the oral evidence introduced, the court finds that on July 4, 1942, the defendant leased to the plaintiff one of the apartments of his house located at 11 Buenaventura Street (interior) in Villa Palmeras, Santurce, for a weekly rental of $2.15; that nothing was stipulated between parties as to the number of persons that could live in said apartment nor as to the payment for the water consumed; that plaintiff occupied said apartment on the above date together with her son and her brother, and still occupies it, paying the agreed rental of $2.15 for the room and the consumption of water; that on December, 1943 the plaintiff wilfully increased the rent of said apartment to $2.50 weekly without any justifiable reason therefor; that the plaintiff had to pay said rental from that day until March 10, 1945; that on February 29, 1944 the defendant sent a rent report to the Housing Division of the Office of Price Administration wherein he stated that the weekly rent of the apartment occupied by plaintiff was $2.50 on October 1, 1942; that after making the proper investigation the Division decided that on October 1, 1942 the rent was $2.15 and on April 1, 1945 it issued an order to that effect, making it retroactive to February 1, 1944; that the decision of the Housing Division stating that on October 1, 1942, the rental was $2.15 was finally accepted by the defendant and that the defendant received from plaintiff the weekly rental of $2.15 from March 24, 1945 to April 21 of the same year."

Taking into consideration the aforesaid facts the lower court held that the plaintiff was entitled to a penalty of $50 for each weekly payment of 35 cents which she made to the defendant for the period between March 14, and June 30, 1944, that is, fourteen weeks which multiplied by $50 make a total of $700, and the amount of $35.70 for triple the amount of the payment she made in excess of the maximum rent during the period between July 1, 1944 and March 14, 1945, that is, for 34 weeks and consequently it rendered judgment ordering the defendant to pay to the plaintiff $735.70 plus costs and $50 for attorney's fees.

228 

Feeling aggrieved the defendant appealed and alleges that the lower court erred: 1st, in admitting an amended complaint which changed the cause of action brought by the plaintiff for herself, to a cause of action brought by the conjugal partnership; 2nd, in ordering the defendant to pay to the plaintiff the amount of $50 for each weekly payment in excess of the maximum rent when the compensation that could have been lawfully granted was triple the amount of all the overcharges that had not prescribed, which had been paid by the plaintiff, and 3rd in granting to the plaintiff any amount for the payments made before September 6, 1944 because the claim for said period had prescribed.

The third error is a sequence of the first and therefore, we shall dispose of them jointly.

The original complaint was filed on March 14, 1945 by Adela Valado without specifying whether she was married or unmarried. The trial was held on September 6, 1945 and the plaintiff testified without any objection from the defendant that she was married to Juan Martínez Cruz but that the latter had deserted her in 1939 and since then they had lived separate and apart. At the close of the evidence for the plaintiff she asked leave of the court to amend the complaint to conform it to the evidence, stating the aforesaid facts. The defendant objected but the court granted the amendment on the authority of a recent case of this Court, without mentioning it, but which could be no other than *Guadalupe* v. *District Court*, 65 P.R.R. 275 wherein we held, on page 278, that "In the oirginal complaint herein the wife made a claim for herself. We therefore reject as surplusage the references to her husband. Once we reach that result, it is obvious that the wife was entitled to amend her complaint in order to allege a fact the absence of which made her complaint defective: abandonment by her husband many years ago. Such an amendment does not change the nature of the cause of action or replace the plaintiff with a completely new party plaintiff. It merely supplies a necessary

fact for a cause of action which, except for this fact, the complaint already states on behalf of the plaintiff. The case is therefore clearly distinguishable from *González* v. *White Star Bus Line, Inc.*, 53 P.R.R. 328 and *Morán* v. *District Court*, 55 P.R.R. 618."

Like in the *Guadalupe* case, *supra*, in the original complaint herein the plaintiff made a claim for herself and she was entitled to allege in the amended complaint the abandonment by her husband. Pursuant to Rule 17 (*d*) (3) of Civil Procedure, a married woman, as a party, does not need to have her husband joined with her when she is living separate and apart from her husband by reason of his desertion of her and she may sue or be sued alone. Since plaintiff offered evidence, without defendant's objection, as to the fact that she was living separate from her husband by reason of his desertion of her, under Rule 15 (*b*) on amendments to conform the pleadings to the evidence, the court did not err in granting the amendment sought by the plaintiff. The effect of said amendment is retroactive to the date of the original complaint, inasmuch as such an amendment does not change the nature of the cause of action or replace the plaintiff with a completely new party plaintiff. Rule 15 (*c*) of Civil Procedure; *Guadalupe* v. *District Court, supra; Bithorn* v. *Santana*, 68 P.R.R. 281.

█ The second assignment raises a question which, because of the different interpretations given in the United States to the scope of § 205 (*e*) of the Emergency Price Control Act of 1942, *supra*, brought about the enactment by Congress of the Stabilization Extension Act of 1944, *supra*, amending said Section. Some state and federal district courts construed said § 205 (*e*) of 1942 in the sense that if the lease was by the week or by the month the violation as to the maximum price only gave rise to one cause of action for $50, regardless of the number of weeks or months that said overcharge was collected. *McGowen* v. *Dumont*, D. C. Mo., 54 Fed. Supp. 749; *Everly* v. *Zepp*, D.C. Pa., 57 Fed.

Supp. 303; *Peters* v. *Felber*, Cal. Superior, 152 P. 2d 42; *Ward* v. *Bochino*, 181 Misc. 335, 46 N. Y. Supp. 2d 54. Other courts construed the statute in the sense that it entitled the tenant to a cause of action for $50 for each payment in excess of the maximum price. *Gilbert* v. *Thierry*, D.C. Mass., 58 Fed. Supp. 235; *Lapinski* v. *Copacino*, 131 Conn. 119, 38 A. 2d 592; *Kerr* v. *Congel*, 181 Misc. 461, 46 N. Y. S. 2d 932. This latter construction prevailed when some cases were decided by the Circuit Court of Appeals for the First and Eighth Circuit.

In *Thierry* v. *Gilbert*, 147 F. 2d 603 (C.C.A. 1, 1945), the maximum rent was fixed at $50 a month and the landlord, without permission from the O.P.A. increased it to $55 monthly because it had supplied the house with a mechanical refrigerator. This sum was paid and received in each of the nine months of the lease for a term of seventeen months. The court held:

"We are also convinced, for the reasons set forth by the District Court, that there are nine separate violations here, to each of which the statutory penalty of $50 is applicable, rather than one violation as claimed by the defendant. It is of no consequence that the tenant went into possession under a lease for seventeen months. . . . The defendant concedes . . . that the first payment and receipt of $55 under the lease constituted a violation. If so, the plaintiff was then entitled to sue for and obtain the statutory penalty of $50 for that violation. Would this have exhausted the sanctions of the statute, leaving the landlord free to collect $55 per month for the succeeding months? Obviously not. The receipt of the second, and each succeeding payment of $55, would be separate violations, and if willfully done would be criminal offenses. The $50 statutory penalty remains as an incentive to the tenant to enforce the regulation for as many times as it may be violated during the succeeding months.

"The result is no doubt harsh in this case, where the landlord acted innocently in making the overcharges. But as originally enacted, and as applicable here, the Act gave the tenant the right to recover the same penalty whether the violation was wilfull or not. The rigors of § 205 (*e*) have been mitigated,

but only prospectively, by § 108 (*b*) of the Stabilization Extension Act of 1944, 50 U.S.C.A. Appendix § 925 (*e*), the legislative history of which clearly indicates that Congress, by such amendment, intended among other things to obviate for the future the hardship in the very type of situation here presented." (See the Report of the Senate Committee on Banking and Currency, as to the amendment copied at the footnote of page 605 of the case we have just cited.)

Section 205 (*e*) was likewise construed, before its amendment, in *Lambur* v. *Yates*, 148 F. 2d 137 (C.C.A. 8th., 1945) and *Kalmar* v. *McKinnon*, 152 F. 2d 263 (C.C.A. 1, 1945).

The lower court did not err, therefore, in granting to plaintiff the penalty of $50 for each offense for the weekly overcharge over a period of fourteen weeks between March 14 and June 30, 1944,[1] that is, $700 and neither did it err in granting $35.70 which is triple the amount of the thirty-five cents which she paid in excess of the maximum rent during the period between July 1, 1944 and March 14, 1945, that is, during 34 weeks under § 205 (*e*), as amended in 1944.

The judgment is affirmed.

Mr. Justice De Jesús did not participate herein.

---

[1] Section 205 (*e*) was amended on this date.